[See Case No. 8,796.]

McGILL (UNITED STATES v.). See Cases Nos. 15,676 and 15,677.

## Case No. 8,798.

### In re McGILTON.

[3 Biss. 144; 7 N. B. R. 294; 29 Leg. Int. 332; 5 Chi. Leg. News, 1; 20 Pittsb. Leg. J. 29.] [1]

Circuit Court, W. D. Wisconsin. Sept. Term, 1872.

BANKRUPTCY — SALE BY ASSIGNEE — JUDGMENT LIEN — EFFECT OF CONFIRMATION — JUDGMENT CREDITOR AT SALE — PROCEEDINGS BY CREDITOR.

1. Where an assignee petitions to sell real estate of the bankrupt, subject to certain specified liens, and it is so ordered, a sale by the assignee free from all liens does not devest the lien of a previous judgment creditor, no reference having been made in either the petition or order to any liens other than those specified.

[Cited in Re Cooper, Case No. 3,190.]

[Cited in Beall v. Walker, 26 W. Va. 747.]

2. If the report shows a sale free and clear of all incumbrances except those named, a simple confirmation by the court is not equivalent to an authority, and does not discharge such liens. To effect that it must expressly appear that knowledge of this excess of power exercised by the assignee, was brought to the knowledge of the court, or that the report was ratified as such.

3. Presence of judgment creditor at the sale by his counsel, would not estop him, there being no authority to sell free and clear of his judgment.

4. It is competent for the court in bankruptcy to authorize a creditor to proceed in the usual way to collect his debt, if that course seems best for the estate.

[Cited in Phelps v. Sellick, Case No. 11,079.]

This was a revisory petition, under the second section of the bankrupt act, filed by Samuel A. Jewett, a purchaser of real estate at assignee's sale, to set aside an order of the district court, authorizing Robert Corbett, a previous judgment creditor of the bankrupts, to proceed upon his execution, and satisfy his judgment out of the property sold by the assignees to Jewett.

Finches, Lynde & Miller, for petitioner.

By the rules of construction uniformly adopted by the courts, as to contracts, statutes, and orders and decrees, the order of sale in this case was the same in its im-

[1] [Reported by Hon. William Cranch, Chief Judge.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission. 20 Pittsb. Leg. J. 29, contains only a partial report.]

port and meaning as if it read subject to the incumbrances therein named, and free and clear of all other incumbrances. If it was not intended to sell free and clear of all incumbrances except those named, why were any named? If the assignees were to sell the property subject to incumbrances, they had full authority by virtue of the bankrupt law [of 1867 (14 Stat. 517)], without any application to the court. In re McClellan [Case No. 8,694]; In re Mebane [Id. 9,380]; Kelly v. Strange [Id. 7,676]. It was only necessary to apply to the court for an order of sale where it was sought to sell the property free and clear of incumbrance, and it was for this purpose the application was made to the court, and the order of court obtained to sell subject to certain incumbrances. The mention of these incumbrances in the order of sale necessarily negatived all idea that the sale was subject to other incumbrances, upon the familiar maxim, "Expressio unius est exclusio alterius." Allen v. Dykers, 3 Hill, 595; Philadelphia, etc., R. Co. v. Howard, 13 How. [54 U. S.] 340; Wait v. Wait, 4 Comst. [4 N. Y.] 101; Morey v. Farmers' Loan & Trust Co., 14 N. Y. 306; Curtis v. Leavitt, 15 N. Y. 259; Sill v. Village of Corning, Id. 306; People v. Draper, Id. 568; Methodist Episcopal Church v. Jaques, 3 Johns. Ch. 110; Atkins v. Bordman, 20 Pick. 304; Com. v. Kneeland, Id. 230; Jordan v. Dennis, 7 Metc. [Mass.] 591. For what purpose were these incumbrances specifically mentioned, unless it was intended that the sale should be subject to those incumbrances alone? It was evidently the intention of the assignees in making their application to the court, that the real estate should be sold subject to the incumbrances named, and none other. They so announced at the sale, and the property was sold with that understanding to the petitioner, who paid full value therefor. It is a general principle that the district court is possessed of the full jurisdiction of a court of equity, over the whole subject-matters which may arise in bankruptcy. In re Foster [Case No. 4,960]. And supposing that the assignees and the purchaser were mistaken as to the construction of the order, the subsequent confirmation of the sale by the court ratified the sale and confirmed the title in the purchaser. The purpose and object of a master in chancery, or commissioner or assignee in bankruptcy, making a report of their sales to the court for confirmation is to inform the court of the terms of the sale, and the manner in which it was made, that the court may ratify it, if correct, and in accordance with the decree or order of court; and, if not, that the court may refuse to order a deed and set the sale aside, and order a resale in accordance with the original decree. The master or trustee is the mere attorney of the court, acting under a specially delegated authority, and in no case is he authorized to do more than to accept an offer or proposal to contract, which is of no validity un-

less it be accepted, ratified, and confirmed by the court. It is the court itself, for the benefit of all interested, therefore, who is the vendor in such cases. Anderson v. Foulke, 2 Har. & G. 353; Blasson v. Railroad Co., 3 Wall. [70 U. S.] 207. When one purchases premises at a master's sale, under the understanding expressed at the time of the sale that he was to have a perfect title under the decree, or a title free from all incumbrances except those stated, and the master's deed will not give him such a title, he may be discharged from the obligation of his purchase. Morris v. Mowatt, 2 Paige, 589; Lawrence v. Cornell, 4 Johns. Ch. 545; Seaman v. Hicks, 8 Paige, 658. Assignees in bankruptcy are as much bound as any other description of vendors to show a good title to any property they offer for sale in the ordinary manner. Cooper v. Denne, 1 Ves. Jr. 565, note; McDonald v. Hanson, 12 Ves. 278. Where they contract to sell an estate generally, they are bound as other persons to make a title to the inheritance free from incumbrances. White v. Foljambe, 11 Ves. 337; Pope v. Simpson, 5 Ves. 145, and note 1; 2 Sugd. Vend. (6 Am. Ed.) 152, 153. These decisions are under the English bankrupt law, where the court has no such power as under our law, to sell free and clear of existing liens, and where the assignee is not regarded as the officer of the court, and the sale is not considered, as with us, a sale by the court. But in this case the sale was made by order of the court, by the assignees, under the direction of the court, and all the facts were reported to the court, and special mention made of the fact that the premises were sold free and clear of all incumbrances, except those specially mentioned. The district judge, in his opinion, says that his attention was not called to this clause. But this was not the fault of the purchaser. A party who invests his money on the faith of an order of court should be protected in his investment, and it is not incumbent on him to prove that the court did what it was its duty to do—know what order it was making. He has a right to presume that the court has done right. Bennett v. Hamill, 2 Schoales & L. 577. The jurisdiction of the district court as a court of bankruptcy extends to the collection of all the assets of the bankrupt, to the ascertainment and liquidation of the liens and other specific claims thereon, and to the adjustment of the various priorities and conflicting interests of all parties. The liens sought to be created against the purchaser are judgments against the bankrupt. A judgment lien on land constitutes no property or right in the land itself. A judgment creditor has no jus in re, but a mere power to make his general lien effectual by following up the steps of the law. Massingill v. Downs, 7 How. [48 U. S.] 767; Becker v. Morton, 12 Wall. [79 U. S.] 158; Conrad v. Atlantic Ins. Co., 1 Pet. [26 U. S.] 443. In chancery the general lien of a judgment is controlled by eq-

uity so as to protect the rights of those who are entitled to an equitable interest in the lands or in the proceeds thereof. Ells v. Tousley, 1 Paige, 280; Buchan v. Sumner, 2 Barb. Ch. 165. The order to sell subject to certain incumbrances is equivalent to an order that the purchaser pay those incumbrances out of the purchase money. The court has, therefore, applied the full value of the property in payment of the prior liens, through the purchaser, who, at least, is entitled to be subrogated to the rights of those lien creditors whose liens have been paid. An incumbrancer has no right to complain when the property on which he has a lien is exhausted in the payment of prior liens. But if the court is of opinion that Corbett is entitled to relief, and should be allowed to sell, it should be upon the condition that he will file an offer to bid the premises up to the full amount of all liens prior to that judgment. The universal rule is that the party applying after confirmation of sale to set the same aside (in the absence of fraud) must offer to increase the bid.

John E. Stillman, for judgment creditor.

DRUMMOND, Circuit Judge. The facts in this case are, that John McGilton and his partners were declared bankrupts by the decree of the district court. Assignees were appointed, and made application to the district court to sell some real estate on which were certain liens and incumbrances. The petition to the district court set forth the character and amount of the incumbrances, and asked that they have leave to sell the real estate, subject thereto. The district court thereupon made an order authorizing the assignees to sell the real estate subject to the incumbrances named. No mention in that petition was made of the judgment of Corbett against the bankrupts, nor any other liens than those described in the petition, nor did Corbett have any notice of the application.

Samuel A. Jewett was the purchaser at the sale. Thereupon a report was made by the assignees to the court, setting forth the application, the incumbrances, sale of the property, and purchase by Mr. Jewett; also declaring in the report that the sale was made "free and clear of all other liens and incumbrances, except those named."

The sale was confirmed by the district court. The particular order by which the sale was confirmed is not set out in the petition. The language of the petition is that the report of sale was confirmed; but in the absence of any evidence of the particular phraseology of the order by which the confirmation was made, the inference must be that it was simply an order confirming the sale.

The proceeds of the sale were distributed under the order of the court, exclusively in defraying the costs and expenses. The incumbrances, it should be borne in mind, upon the property, amounted to quite a large sum—over twenty thousand dollars, as stated in the petition—which of course the purchaser had to pay in order to get a title to the property.

After these proceedings took place in the district court, Robert Corbett made application to the district court to obtain satisfaction of a judgment which he had against the bankrupts, and which he claimed was a lien upon their real estate, and asked that it should be paid out of money in the hands of the assignees, or that he should have satisfaction out of the property of the bankrupts. After hearing this application, upon answer made by the assignees, and by Mr. Jewett, the purchaser at the sale, the district court made an order authorizing Corbett to proceed by execution, and have his judgment satisfied against the property. This judgment had been recovered in a state court, against the bankrupts more than six months before proceedings in bankruptcy were commenced.

It is this order which the petitioner Jewett seeks, under the second section of the bankrupt law, to set aside, on the ground that the sale was made of the property free from all incumbrances, and that the purchaser acquired a good title.

It will be observed from the statement which has been made, that the petition of the assignees to the district court simply requested, and the order of the court directed, that the property should be sold subject to the liens specified. It made no reference whatever to any other liens. It was not asked, nor was it authorized, that the property should be sold free and clear from all incumbrances other than those named.

And when the report was made, it contained what was not in the petition, nor in the order of the court, namely, that it was sold free of all incumbrances, except those named. That was inserted in the report, and, as I think, without authority.

Now, under such circumstances, it is clear, if it be conceded that the district court had the right (as to which I give no opinion) to effect the sale of the property free and clear of all incumbrances, by a simple ratification of the language of the report, then it should explicitly appear in the order of confirmation that the report was confirmed, and that the sale, which it is alleged the assignees made free from all incumbrances except those named, was confirmed as such, so as to show that the court acted upon that part of the report, and confirmed the sale by making it free and clear from all other incumbrances.

That would be indispensably necessary, I think, under the circumstances, in order to make it binding upon the court, because it could be only effectual by a ratification brought home to the knowledge of the court of this clause in the report of the assignees.

They were acting under a power. They were bound to follow the instructions of the power. If it was sought to be enlarged the court ought to have known of that enlargement, and ratified and confirmed it as such. Now, there is nothing to show, except what appears upon the face of the record, that this particular part of the report was brought to the knowledge of the court, and that it ratified that part. On the contrary, it is apparent, from the opinion of the district judge in deciding the question, that it was not done.

It is said in the petition that at the sale Mr. Corbett was present by his counsel, and made no objection. It does not appear what action the court took upon this point, or whether there was any proof heard before the court. In other words, it does not appear that the district court considered the question, or decided that Corbett, by being present through his counsel at the sale, and making no objection, was estopped from setting up a claim under his judgment. And therefore this court cannot consider that as a question properly before it for revision. Concede that were so—that by being present at the sale under certain circumstances, and making no objection, he would be estopped—it is sufficient to say that if he were present at the sale, which is denied by an informal answer put in, all that appears is that he was present with the knowledge of the authority which had been given, to sell, subject to certain judgments; and Corbett's judgment was not named in the list, neither in the petition nor in the order of the court, nor in the report of the assignees, nor in the confirmation in any way. And the district court never had any knowledge, it is fair to presume, of this judgment, until the petition was filed by Corbett. So that if he was present at the sale by his counsel, he was present in contemplation of law only with knowledge of those facts which were stated in the petition of the assignees, and in the order of the court. Whether he would be bound by an unauthorized statement made by the assignees at the sale, might admit of serious question.

We must concede that the bankrupt court had control of the property, because it was a simple lien, and the bankrupts owned the property, subject to the lien, and it passed to the assignees as the property of the bankrupts, subject to the lien. Still, if valid and subsisting, it could not be destroyed so long as the property which was bound by it remained under the control of the assignees, and of the court. Now, in the case as it is presented, the court must presume that this lien was a valid and subsisting lien, that it was not in violation of the bankrupt act, and I have no doubt, therefore, that the judgment of the district court was right—that this party is entitled to have satisfaction out of the property of the bankrupts.

It is to be observed that Corbett could not proceed upon his judgment without the consent of the bankrupt court. It is sometimes the case that creditors, who have judgments, proceed to sell the property covered by the lien of the judgment, where it has passed by law to the assignees; but the courts have uniformly held those sales were invalid, if made without authority of the bankrupt court. If it be admitted the court, where there are liens on real property of the bankrupt, can order it to be sold free from the liens, to marshal the assets and pay off the liens, it is equally competent for the court to authorize the creditor to proceed in the usual way to collect his judgment, if that course seems best for the estate.

The decree, therefore, of the district court will be affirmed, without prejudice to the right of the assignees to contest the judgment which Corbett has obtained, if they are advised that it can be done as being in fraud of the bankrupt act, or otherwise invalid.

NOTE. As to the power of the court of bankruptcy to sell property free from liens, the liens being transferred to the funds in court, consult, also, In re Stewart [Case No. 13,418]; In re Barrows [Id. 1,057]; In re Schnepf [Id. 12,471]; In re Salmons [Id. 12,268]; Foster v. Ames [Id. 4,965]. In which latter case the authorities under the act of 1841 [5 Stat. 440] are examined, and declared applicable to the present act. Unless by order of the court, the assignee sells subject to any and all lawful incumbrances. In re Mebane [Case No. 9,380]; Kelly v. Strange [Id. 7,676].